This morning we have two cases which will be orally argued and two cases that will be submitted on the record. The first case on the record for the purposes of our recording is 2009-1506, In re, Aurora. The second submitted case on the record is 2010-3037, Becker v. the VA. The first case to be orally argued is 2009-3256, Chen v. MSPB. Mr. Mulhern, whenever you're ready, Mr. Mulhern. You may proceed. MR. MULHERN Good morning, Your Honors. I'm Robert J. Mulhern. I'm the attorney for the petitioner, Elizabeth A. Chen. The pivotal issue in this case is whether Mrs. Chen was in the Federal Career Internship Program. The administrative judge out of California held that she was, and the full board out of Washington, D.C. affirmed that decision. THE COURT Did that make a difference to where it's located? MR. MULHERN No, I don't think so, Your Honor. THE COURT If we just hypothetically were to agree with the government that she was properly appointed under subsection E of these regulations, and we were to reject your, leap your argument, then you'd lose the case, right? MR. MULHERN Your Honor, 3205E was the wrong authority. THE COURT Well, I understand. That's why I'm saying hypothetically. I'm just trying to understand what the issues are. If we reject your position and hold that she was properly appointed under E, and if we reject your, leap your argument, the case is over. That's it, right? MR. MULHERN Your Honor, 3205E THE COURT Is it yes or no? MR. MULHERN Yes, Your Honor. THE COURT Okay, all right. So explain to me why it is then that they couldn't properly proceed under E, okay? MR. MULHERN 3205E, Your Honor, there are several reasons. First, ATF admitted that my client was in the Federal Career Internship Program. If we look at page 9 of the appendix, and it's the initial decision. THE COURT Well, the government says that's a mistake, right? MR. MULHERN It's no mistake, Your Honor. They held it, and it was affirmed by the full board. THE COURT I thought the government's position was that she was appointed under E and not into the Career Internship Program. MR. BOUTROUS Yeah, if they admit that she was appointed under, we'll call it O, rather than E, if they admit she was appointed under O, then you win. So are you saying they've admitted it, the case is over? Why are you here? MR. MULHERN Your Honor, because they admitted in their termination letter that my client was in the Federal Career Internship Program. THE COURT Well, no, wait a minute. They don't admit it in their termination letter. They wrote, first of all, the determination of how she gets appointed is in the appointments document. In the termination letter, you're quite right. They wrote that she was under O. The question is, which controls, the appointment document or the termination document, right? MR. MULHERN Your Honor, we look at the totality of the circumstances. If we don't look at the intent of the agency, it's the totality of the circumstances. THE COURT But isn't it controlling as to the documents that were the initial appointment documents? I mean, that's how the appointment is made, by the initial appointment documents. That's how your standing is within the employment community at that point. MR. MULHERN Your Honor, the termination is a separate issue. MR. MULHERN If you look at the totality of the circumstances and you look at the termination letter, the termination letter specifically said my client was in the Federal Career Internship Program. THE COURT Let's assume that we, let's assume, counsel, that a year after the, she went to work for the ATF. I visited ATF and I looked at Ms. Chan and I said, oh, there's a Ms. Chan working here. What program is she appointed under? What would the answer have been? MR. MULHERN The Federal Career Internship Program. If you look at... THE COURT Wait, wait, wait, wait. First of all, there's a problem with terminology. Federal Career Internship Program, both the O Program and the E Program use the same language. One's a pilot program, one was eventually the official program, right? So let's call E the pilot program. Can we do that? MR. MULHERN Yes, Your Honor. THE COURT Am I, or you're with me on that one? MR. MULHERN Yes, Your Honor. THE COURT Was she appointed under the pilot program? MR. MULHERN Yes, Your Honor. THE COURT So at the end of her first year of appointment... MR. MULHERN No, Your Honor. THE COURT No? MR. MULHERN And I'm going to take back what I just said. THE COURT Well, the government does it too, so go ahead. MR. MULHERN She was appointed under 3202, the Federal Career Internship Program, using that authority. That's what she was appointed under. THE COURT Can you remind me where in the record is that appointing document? I was just looking for it again. I'm sure I have it somewhere. MR. MULHERN 3205E had to be replaced by 32020. The pilot phase was replaced by the Federal Career Internship Program. THE COURT Is your theory that she couldn't be appointed under E because that authority didn't exist anymore? MR. MULHERN Yes, Your Honor, because it was replaced. If the pilot... THE COURT Well, how do we know it was replaced? MR. MULHERN If the pilot program was not replaced by 32020, it violates the executive order. In the letter dated November 4, 1999, and March 30, 2000, it specifically said that you had to follow the terms and conditions of the executive order 13162, which created the Federal Career Internship Program. THE COURT Well, how did the executive order deprive them of the authority under E? MR. MULHERN Because 3205E, if it didn't replace it, violated the executive order. For example... THE COURT How? MR. MULHERN The Federal Career Internship Program was a maximum of three years. The pilot program was a maximum of three years and 120 days. The executive order specifically states it can be no more than three years. The Federal Career Internship Program, which is 13162, required ATF to, in writing, to... THE COURT Where is this provision in the executive order? Show us the language. MR. MULHERN Your Honor, if you look at section A of the executive order... THE COURT Where? MR. MULHERN The appellant's appendix on page 34. THE COURT 34? MR. MULHERN Yes, Your Honor. It's section 4A. THE COURT 4A, okay. MR. MULHERN And it says a successful candidate should not be appointed position in the Schedule B of the Accepted Service at GS 5, 7, or 9 unless otherwise approved by OPM. ATF was required, in writing, to request an extension from two years to three years, which did not occur. By the admission of the Merit System Protection Board, there was no evidence that we had such an extension. THE COURT But this executive order seems to be describing the Federal Career Internship Program rather than limiting the authority under E. But E was replaced as of July 6, 2000, when President Clinton signed the executive order. MR. MULHERN How do we know that? MR. MULHERN Because one of the reasons 3205E violates this, not only section 32020, but violates the executive order. And the reason being is, one of the main reasons is the executive order itself states it can only be for three years. The maximum term. THE COURT But it's talking about the internship program. It's not talking about E. You say it's talking about E. What's the basis for saying it's talking about E? MR. MULHERN Why it violates this executive order is the maximum term for the executive order. THE COURT But you're not answering my question. What is the basis for concluding that the executive order eliminates the separate authority under E? MR. MULHERN Because it violates the executive order. THE COURT Why? MR. MULHERN The government was required to follow the terms and conditions of the executive order. The November 4, 1999 letter specifically stated that it was a pilot program. THE COURT Where does the executive order reference subsection E? MR. MULHERN It doesn't, Your Honor. THE COURT Okay. That's your problem. MR. ZIEGLER Let me be sure, on the basis of this colloquy here, let me be sure I understand exactly where you are. Look at 22 of the appendix, page 22 of the appendix, please. MR. MULHERN Yes, Your Honor. THE COURT That's the SF-50 that Ms. Chan was appointed under in 2005, correct? MR. MULHERN Yes, Your Honor. THE COURT And at the top, it says, Legal Authority 213-3205E. Down below, it says, Recruitment in accordance with 5 CFR 213-3205E. Now, do I understand you to say that they couldn't do that? Is that your position?  MR. MULHERN It was wrong. That's correct. THE COURT And that's your case? MR. MULHERN That's correct, Your Honor. If I can refer the Court to our appendix number 28. THE COURT Okay. MR. MULHERN Now, let's start with number 27 first. THE COURT Your argument. Start where you want. MR. MULHERN Number 27, Your Honor. It's the November 4, 1999 letter that specifically says, therefore, as an interim solution, you're granted Schedule B authority without conversion as a part of our piloting federal career internship program. And I'm reading, it's halfway down in the second page. THE COURT This is actually 26, but go ahead. MR. MULHERN Yes, Your Honor. This is 26. THE COURT 26. MR. MULHERN It was specifically, 3205E was specifically only to be used for the pilot phase. The pilot phase went from this letter date, November 4, 1999, to the day before President Clinton signed the Executive Order 13162, which created the federal career internship. THE COURT What is the basis for that? MR. MULHERN Your Honor, because it specifically says in this letter, 3205E was only for the pilot program. That's it. And that was only eight months, the pilot program itself. If I also... THE COURT Wasn't that trying to correct the original  MR. MULHERN The letter that you're referring to, that might have been given under the SF50? MR. MULHERN For my, our case, Your Honor?  MR. MULHERN No, because it was only a pilot phase. My client was hired on September 18, 2005. This is five and a half years after the pilot phase. THE COURT I understand that. But if the appointment under, in 2005, was incorrect, how was it corrected? MR. MULHERN 32050, it was a mistake for the government to use 3505E. 32020 replaced the pilot program on July 6, 2000. If we all, if Your Honor, I see my time's out, is up, briefly, if I could, page 28 of the appendix also says, as this authority, it's a third paragraph, as this authority is granted as a part of the career intern pilot program, compliance with the parameters of the program outlined in the executive order is required. They were required to follow executive order, the terms and conditions of executive order 13162, which created the Federal Career Internship Program. I see my time. THE COURT We'll restore two minutes of your rebuttal time. MR. MULHERN What's that, Your Honor? THE COURT We'll restore two minutes of your rebuttal time. MR. MULHERN Thank you, Your Honor. THE COURT We've had enough questions. Thank you. MR. MULHERN Thank you, Your Honor. THE COURT Ms. Friedman, are you ready? MS. FRIEDMAN Good morning. May it please the Court. When Ms. Chan was appointed to her intern position back in September 18, 2005, ATF had scheduled the appointing authority under the FSIP, or the Federal Career Intern Program, codified at 32020. And they also had agency-unique schedule the appointing authority under 3205E. MR. MULHERN Does the E authority still exist? MS. FRIEDMAN The E still existed. MR. MULHERN Today? MS. FRIEDMAN It exists according to the Federal Register. I just looked up the Federal Register as of 2009. It no longer lists the specific provision, but it still lists the same language that ATF has the ability to appoint special interns for a three-year program. So it still lists the Federal Register during the time of Ms. Chan's selection and well past the time of Ms. Chan's selection. MR. MULHERN In 2005, the Federal Register continued to carry this program? MS. FRIEDMAN Yes. MR. MULHERN 2006? MS. FRIEDMAN Yes. 2007. And that's all listed in Federal Register sites on page 14 of my brief. And those Federal Register appointments are legal authority pursuant to 5 CFR 213.103, requiring OPM to list those authorities every June to show what's still legal authority for appointments. MR. MULHERN Ms. Friedman, let me ask you a question regarding the SF-50. MS. FRIEDMAN Yes. MR. MULHERN If the appointing authority, the legal authority under that SF-50 was erroneous, was there a corrected SF-50 that was drafted and issued to correct the error of the first SF-50? MS. FRIEDMAN No, because the first SF-50 was not an error. It was a 3205E appointment. And we know that not just from the SF-50 form and not one place where it mentioned 3205E, but three places on the form. MR. MULHERN Go ahead. MS. FRIEDMAN Where 3205 was mentioned, plus the OPM code for ATM unique Schedule B authority. And that is in the appendix, Petitioner's Appendix at page 59, where it lists different OPM legal authorities. And on the SF-50 form, it lists YCM on, I think it was Block 5D on the SF-50 form, as it listed, I'm sorry, Y5M indicating the 3205E authority rather than YCM, which would have indicated the O authority that denotes the Federal Career Intern Program. MR. MULHERN But procedures and regulations do require that if the original SF-50 was issued an error and the authority was an error, don't you require a corrected SF-50? MS. FRIEDMAN Yes, but there was no error. MR. MULHERN Is there one in the record? MS. FRIEDMAN No, but there was no error on the issue. MR. MULHERN The presumption is that the first SF-50 was issued correctly? MS. FRIEDMAN Yes. MR. MULHERN Under the proper authority. MS. FRIEDMAN Yes, and there is also evidence buttressing the fact that, not just the SF-50, that she was hired under the 3205E authority, and that is that she had many letters before her appointment that her appointment would be for a three-year period. The regular Federal Career Intern Program would normally be for a two-year period. So the fact that the duration, she was told that the duration would be three years from the get-go indicated that it was an E appointment, not an O appointment. MR. MULHERN Would it make a difference if it was an O appointment? I mean, since the authority under O could extend for three years, is the fact that they didn't get the internal approvals, is that a housekeeping regulation that the employee is barred from relying on, or is that something that affects the employee? MS. FRIEDMAN Well, a person's rights and benefits come from the appointment that they are appointed to. MR. MULHERN No, I understand, but suppose that under the Career Internship Program, under O, she could still have been appointed for a three-year period. They just needed to get an approval, which they didn't get. MS. FRIEDMAN Yes. MR. MULHERN And what I'm asking is, if they didn't get the approval that they needed, what are the consequences of that? I mean, is that just a housekeeping matter that's internal to the government, or does that affect the actual appointment? MS. FRIEDMAN Well, if you're asking, well, what happens if I'm understanding your question  If it was – MR. MULHERN Are you aware of the line of cases that holds that certain government regulations and time limits are internal to the government and don't affect the people with which the government deals? Are you familiar with those cases? MS. FRIEDMAN I'm not understanding – MR. MULHERN Okay, then if you're not familiar with the case, it's hard for you to address  MS. FRIEDMAN Okay. MR. MILBRAD Ms. Friedman, in the December 6, 2007 letter from the Department of Justice to Ms. Chan, it says she was appointed in accordance with Executive Order 13162, which is the O program. MS. FRIEDMAN Well – MR. MILBRAD My question to you then is, was the Department of Justice lying in 19 – I mean in 2005, or were they lying in 2007? Because those are inconsistent positions. MS. FRIEDMAN Okay. The Executive Order never revoked the E program. And what the Executive Order said was that the F-CIP program would be complementary to existing programs. So the mere fact that the agency mislabeled the appointing authority doesn't take away from the nature of the authority itself, which is demonstrated by the appointment code on the SF-50 form, the agency's intention to have the appointment for three years, not two years, and the actual duration of the appointment. MR. MILBRAD So the government's position is simply that the 2007 document was erroneous and that the authority of the 2005 document was still in effect in 2005. MS. FRIEDMAN Right. And mere mislabeling doesn't change the nature of the appointment. MR. MILBRAD Okay. MS. FRIEDMAN So because Ms. Chan's 3205E appointment gave as a condition of the appointment a three-year time limitation, her separation at the end of the three years did not constitute an adverse action, removal action under 5 U.S.C. 7512 and 7513. Her termination was not for a cause that would promote the efficiency of the service, which is usually what an adverse action is. It was rather an action under 5 CFR 752.401B11, which is a separation on the expiration date of a time-limited appointment, and that is not an appealable adverse action. Because there is a valid distinction between an agency taking an action to remove someone for cause and the natural termination of a time-limited appointment, there is no conflict between the statute at 7512 and 7513 and the regulation at 752.401B11, excluding separations such as Ms. Chan as appealable to the Board. And if there are no other questions, I rest on the rest of the arguments in my briefing. I respectfully ask the Court to affirm the Board's decision. THE COURT Thank you, Ms. Friedman. Mr. Mulhern, you have two minutes. MR. MULHERN Your Honor, as to the intent, again, it's under the totality of the circumstances that we look at this case. The intent of ATF is not the proper standard. Just because an agency says something is right on the forms or just because the agency requires my client to sign certain forms doesn't mean that the agency's actions are correct. 3205E is an improper authority. It violates the Executive Order 13162, which created it. My client was hired on September 18, 2005, some five and a half years later after this Executive Order was signed. If we look at the expiration of appointment issue and these time-limited issues, the Federal Career Internship Program is not a time-limited program. It does not have a not-to-exceed date. If we look at August 2, 2005, the Federal Register specifically states they are made without not-to-exceed dates because these appointments are not time-limited. The reason behind that is they can be appointed to a non-competitive conversion. If we also look at the CFR 752-401-B11 that the government's reference to, you have to be terminated on the day of the expiration. My client was not terminated on the day of the expiration date of the program. She wasn't in the program after two years. She was employed for three years and a day. So the 452-401-B11 isn't even appropriate to this case. If the Court has any other questions. Thank you, Mr. Mulhern.